# Weaver *v.* The State.

*Indictment for Abusive or Insulting Language in or near
Dwelling-house, in presence of Family.*

1. *Sufficiency of indictment.*—In an indictment for using abusive,
insulting or obscene language, in or near a dwelling-house, or in the
presence of women (Code, § 4203; Sess. Acts 1880–81, p. 30), it is suffi-
cient to pursue the language of the statute, and is not necessary to
specify the words used.

2. *Ownership of house; averment and proof of.*—When a widow mar-
ries again, and removes with her husband from her former residence,
leaving her children by the first marriage in possession, the house may
be described in an indictment as their dwelling-house.

3. *What words constitute offense.*—When the defendant, whose wife
had left him, went to the house in which her children by a former mar-
riage lived, searching for her, and, on leaving, was told by one of them
not to come there again; to which he replied, "*I'll go where I dam
please, and it don't make a dam bit of difference where it is;*" *held,* that
these words would support a prosecution under the statute.

FROM the Circuit Court of Chilton.

Tried before the Hon. JAMES E. COBB.

The indictment in this case was found in October, 1883, and
charged, in its first count, "that Albert Weaver did enter into,
or go sufficiently near the dwelling-house of Robert C. Lenoir,
Josie Lenoir, and Lulu Lenoir, and in the presence, or within
the hearing of the occupants of said dwelling-house, or of some
member of said family, and made use of abusive, insulting, or
obscene language;" and in the second count, that he went into

or near "the dwelling-house of Robert C. Lenoir, and in the presence, or within the hearing of the family of the occupant thereof, and made use of abusive, insulting, or obscene language." The defendant demurred to the first count of the indictment, on the ground that it was uncertain and indefinite, and charged no offense; and because there was no sufficient description of the house, or averment of ownership. The court overruled the demurrer, and the defendant then pleaded not guilty, on which plea issue was joined.

On the trial, as the bill of exceptions shows, the State introduced as witnesses said Robert C. Lenoir, and his two sisters, named in the indictment, who testified, in substance, that the defendant married their mother in February, 1883, and lived in the house with them for several months, "it being the dwelling-house of a former husband of their mother;" that he and his wife then moved out of the house, into a smaller house on the premises, which was about one hundred and fifty yards distant from said dwelling-house, "telling· them to remain in the house, and to support themselves; that said Robert C. was at that time about nineteen years of age, and he took charge of the household, which consisted of himself and his said two sisters, who were younger than he was;" that the defendant's wife left him some time afterwards, and, on the same day, he came to their said house in search of her, and searched through it, turning up the beds, and going through all the rooms, but did not find her; that when he got out, or was going out of the house, Josie Lenoir, who was about eighteen years of age, said to him; "Mr. Weaver, don't come here any more;" to which he replied, as she testified, " *I'll go where I dam please, and it don't make a dam bit of difference where it is ;* " or, as the other witnesses testified, "*I'll go where I God dam please.*" The testimony tended to show, also, "that the children were opposed to their mother's marriage with the defendant, and their feelings to the defendant were not kind; and that the manner and language of the defendant, on said occasion, was rude and angry."

On this evidence, the defendant asked the court to instruct the jury, "that if they find the only language used by the defendant was as testified by Miss Josie Lenoir, in reply to her telling him not to come there any more, then this language is not a violation of the statute." The court refused to give this charge, and the defendant excepted to its refusal.

WATTS & SON, for the appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—The indictment pursues the language of the statute, and is sufficient.—Sess. Acts 1880–1, p. 30; *Yancey v. State*, 63 Ala. 141.

No question is raised by the record as to the ownership or occupancy of the dwelling, described in the indictment as the dwelling-house of Robert C. Lenoir and others named. Conceding that it had been the dwelling-house of Mrs. Weaver's former husband at the time of his death, and that it thence became her dwelling by virtue of her quarantine rights, this was in her a mere privilege to occupy until dower was assigned her. It gave her no title. The title was in the heirs of the deceased husband. She was not compelled to remain in possession; and if she ceased to occupy it, it ceased to be her dwelling-house. The question, whose dwelling-house it was, raised an inquiry of fact, and not of law. The court was not asked to rule upon it; and if there had been such request, it would seem that the finding must necessarily have been, that it was, at the time, the dwelling of Robert C. Lenoir and his sisters, and not of Weaver and wife. They had voluntarily abandoned it as a dwelling, and had acquired another; and whether Lenoir and sisters had title or not, the testimony tends to show it had become their dwelling-house by the act and consent of Weaver himself.

In the charge asked, no inquiry is presented as to the ownership or occupancy of the dwelling. It takes the broad ground, that the language imputed is neither "abusive, insulting, nor obscene," irrespective of the place at which it was spoken, or of the attending circumstances. The testimony, as we have shown, tended to prove that the house was the dwelling of the Lenoirs. If so, they had the right to warn Weaver not to enter it, and to forbid his doing so. Giving him such warning, gave him no cause of offense; and if he, in reply, uttered the language testified to by either of the witnesses, we can not affirm, as matter of law, that this was not insulting. It was, at least, a threatened defiance of the warning he had received, not to come again on the premises. This, of itself, would be insulting to the average householder. The language was coarse in itself, and may have been uttered in a very defiant, or insolent manner. The Circuit Court did not err in refusing to give the charge asked.

Affirmed.